THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* DAVID OTERO VALLE, Defendant and Appellant.

No. CR-62-348.        Decided September 30, 1963.

*Armando A. Miranda* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

David Otero Valle, appellant herein, was charged with a violation of § 5-801 of the Vehicle and Traffic Law of Puerto Rico, No. 141 of July 20, 1960, 9 L.P.R.A. § 1041,

consisting in operating a motor vehicle under the influence of intoxicating liquor, as a result of which he did not have full dominion and control over the same. The corresponding trial having been held, the court found him guilty and sentenced him to serve 15 days in jail and also suspended his driver's license for a period of one year. The court further stated that, "taking into consideration that there is no reason at all warranting his refusal to have a blood smear taken, his license is suspended for an additional period of six months."

■ 1. In the first assignment of error appellant complains of the "undue" intervention of the judge who presided in the prosecution in the course of the cross-examination by the defense. We have examined the incidents to which he refers. The error assigned is without merit. The judge's intervention was aimed at clarifying a certain aspect of the evidence on the rural or urban character of the place where the peace officer caught the defendant driving recklessly. In fact, this aspect of the case was hardly pertinent in determining criminal liability. *People* v. *Nieves Alvelo, ante,* p. 46; *People* v. *Martínez Acevedo,* 88 P.R.R. 194 (1963); *People* v. *Aletriz,* 85 P.R.R. 621 (1962). Furthermore, no prejudice resulted if we consider that the trial was not held before a jury. *People* v. *Rodríguez Acaña,* 88 P.R.R. 325 (1963).

■■ 2. The second error aimed at challenging the sufficiency of the evidence is also without merit. The testimony of the policeman who arrested the defendant, if believed—as in fact it was—supports the conviction. Appellant, whose occupation was rum advertiser, was driving a commercial van around 1:00 a.m. along the military road, "he applied the brakes . . . then he accelerated and again he sounded the horn," and continued when the police patrol sounded the siren for him to stop. When he was finally stopped after

the patrol pursued him along several kilometers and intercepted him, he got out, it having been observed that he talked incoherently, was irritable, and smelled strongly of liquor. When he was asked whether he had imbibed intoxicating liquor, he answered that "he had had several drinks and that he did it because he sold liquor." This evidence complies fully with our well-settled rule on the matter. *People* v. *Vélez Ruiz, ante*, p. 51, and cases therein cited. *Cf. People* v. *Zalduondo Fontánez, ante*, p. 63.

3. In the course of examination the policeman who detained the defendant testified that at first the latter consented to the taking of the smears required by the Act for the purposes of the chemical analysis and conducted him to the Health Center of Vega Baja. There, in the presence of Dr. Guillermo Saadé, the defendant refused. In view of this refusal, the officer says that "I explained the law to him, that if he refused to have the urine or blood or breath sample taken and the court found him guilty, his license could be suspended for two years." He insisted on his refusal.

The third error assigned by appellant challenges the additional suspension of the license to operate motor vehicles decreed by the court based on the refusal to have blood smears and urine sample taken. He alleges that (a) the information did not contain any charge that defendant had refused unjustifiedly to have the sample taken for analysis; (b) the trial court cannot make such a determination without first giving him an opportunity to explain specifically the reasons for his refusal; and (c) the only charge imputed in the information, against which he was prepared to defend himself, was a violation of § 5-801, which neither in itself nor in the clause relative to the penalties which it entails contains any provision on the suspension of the license for an additional period, thereby violating his constitutional rights "on the information to be set forth in the information."

It is necessary to review the legislation on this aspect of the law in order to understand better the impropriety of the contention.

The offense of operating a motor vehicle in a state of intoxication was incorporated specifically into our criminal law by the enactment of § 13 of Act No. 279 of April 5, 1946 (Sess. Laws, p. 598, at 636).[1] On April 1, 1953, the Governor of Puerto Rico addressed a message to the Legislative Assembly expressing "deep concern regarding the alarming proportions reached by the increasing number of automobile accidents that have been occurring on the highways," and he stated that "the government could prevent a great number of such accidents by *making* the laws which penalize careless driving *more severe.*" Among other general norms, he proposed that "any person guilty of the offense of driving a motor vehicle in a state of intoxication be sentenced to jail, without alternative of fine."[2] These executive suggestions were carefully considered and it was concluded that "the proper thing to do before enacting such legislation was to make the necessary studies and investigations in order to establish in our legislation scientific procedures whereby the degree of intoxication of delinquents could be determined, so that the courts could avail themselves of all such additional means of evidence as could insure the rights of the innocent citizen, and to provide the community and the state with the means leading to the conviction of the guilty ones."[3]

---

[1] This section was amended by Act No. 156 of April 26, 1951 (Sess. Laws, p. 368) in order to increase from five to twenty-five dollars the minimum fine in the event of conviction.

[2] II-3 Journal of Proceedings 1718 (1953).

[3] Report of the Special Committee on Traffic on H.B. 1250 which later became Act No. 95 of June 29, 1954. IV-3 Journal of Proceedings 1486 (1954).

Consistent with this legislative purpose, Representative Ramos Mimoso expressed himself as follows: ". . . this Legislature is in no position,

As a result of this legislative study, and for the purpose announced of reconciling the interest of the community with the guarantee of the citizens' rights against possible excesses in the application of the law, Act No. 95 was approved on June 29, 1954 (Sp. Sess. Laws, p. 992), the principal innovation of which consisted in introducing the system of chemical analyses to determine the degree of alcoholic intoxication of the drivers.[4] It prescribed the procedure for taking samples, determining the probative effect of the findings of the analyses, and in the event of refusal of a person detained to submit to the required analyses, it provided:

"7. If, after having been arrested and subsequently required to submit himself to such chemical analysis, said person refuses to do so, the analysis shall not be made. The public peace officer who made the arrest shall take said person before a Magistrate, who, after investigating the case and hearing, under oath, the public peace officer, the arrested person, and any other interested person, shall, if there is probable cause, direct that the proper complaint or charges against the arrested person be filed in the Court of First Instance."

It further provided an administrative procedure for suspension by the Secretary of Public Works of the license of those drivers who refuse to submit to chemical analysis. This procedure was commenced by the remittance by the magistrate to the Secretary of Public Works of a copy of

---

under any circumstance whatever, to defend those individuals who violate the law. Our obligation is fully discharged by giving them all the guarantees to defend themselves in court, *but not by facilitating the defenses to them, beyond what is normal and reasonable, and depriving the State of the means to establish their guilt in a court.*" (*Op. cit.* at 1517.) And Representative Figueroa, voicing the legislative intention, said that "But to guarantee the order and administer justice is not to open the doors to those accused so that they *may have advantages by which to escape under the color of a legal technicality.*" (*Op. cit.* at 1517.)

[4] In relation to the constitutionality of the statutes authorizing chemical analyses to determine the degree of alcoholic intoxication, see footnote 4 of the opinion rendered in *People v. Superior Court,* 84 P.R.R. 378 (1962).

the sworn testimonies given and the latter, "based on the testimonies given before the Magistrate, shall suspend the driver's license or permit of the arrested person." The aggrieved party could request a hearing within 60 days in order to determine whether he was justified in refusing to submit to examination.

The procedure to be followed whenever the arrested person refused to submit to chemical analysis was substantially preserved upon enacting the present Vehicle and Traffic Law of 1960 (No. 141 of July 20, 1960). See, in this connection, § 5-804 (9 L.P.R.A. § 1044). The main changes introduced consisted in: (a) providing what the sworn testimony of the peace officer making the arrest or of the officer then in charge of the station or zone where the arrest is made shall set forth, *with particular emphasis on the fact of the request made to the person arrested to submit himself to the analysis, his refusal and the fact that he explained to the latter the consequences of his refusal* (suspension or cancellation of the license);[5] (b) providing that a copy of the sworn testimonies shall be delivered to the arrested person at his request; and (c) *eliminating the procedure before the Secretary of Public Works for suspension of the license as a result of the refusal to submit himself to examination, and transferring this power to the court taking cognizance of the violation for driving a motor vehicle while intoxicated.* As to the latter particular, it is well to state that the bill which finally became Act No. 141 (substitute of S.B. 304) provided in § 5-805 for the administrative procedure for suspending the license whenever the operator refused to submit himself to examination, and which as a whole was very

---

[5] Journal of Proceedings 2213–20 (1960). Representative Concepción de Gracia, author and chief sponsor of the amendment, justified the inclusion of that provision by arguing that most persons with little education, among whom are most of the operators of public service automobiles and taxicabs, were not conscious of the consequences of the refusal.

similar to the former procedure established in 1954. The bill stood as drawn up until at the last stage of the debate in the House of Representatives it was proposed on June 22, 1960, that the administrative hearing before the Secretary of Public Works be eliminated and that it be transferred to the court taking cognizance of the violation. Journal of Proceedings 2227 (1960).

The inference clearly to be drawn is that they are parallel, separate proceedings: one, of the exclusive competence of the judicial sphere, for which compliance is required with the provisions on criminal prosecution, and the other, of a purely administrative nature, which does not commence with the filing of the information. In *People* v. *Superior Court,* 86 P.R.R. 791 (1962), we said: "It concerns two distinct situations of fact which must be established with different facts; the first one refers to the commission of a public offense, the second, to the administrative provision of a license issued by the State." In the criminal prosecution the State is bound to prove, beyond a reasonable doubt, that defendant was operating a motor vehicle under the influence of intoxicating liquor. In the administrative procedure it is only necessary to establish "the driver's unjustified conduct in refusing to have the required samples taken," *People* v. *Superior Court, supra,* namely, (a) the request made for the taking of the samples; (b) his refusal; and (c) that he was warned on the consequences which such refusal entails.[6]

---

[6] Under former legislation the Secretary of Public Works determined, on the basis of sworn testimonies given before the investigating judge, a copy of which was furnished to him, whether the suspension of the license was in order and informed the operator accordingly. If the aggrieved party wished to challenge this administrative action, he could request a hearing for the purpose of determining "only whether or not the chauffeur or driver was justified in his refusing to submit himself to the examination." Section 1 of Act No. 95 of June 29, 1954 (Sess. Laws, p. 992).

That is why according to the principle of separability of actions, the license may be revoked even though defendant is acquitted of the commission of the offense, and inversely, he may be convicted and yet his license not be suspended for the additional period provided by § 5-804(c), 9 L.P.R.A. § 1044(c), if the court finds that the explanation for refusing to submit himself to have the samples taken is satisfactory.

In this case the evidence showed that the officer who carried out the arrest urged appellant Otero Valle to have the samples taken, that he refused, and that he was warned that his refusal would entail the suspension of the license.[7] Appellant was therefore bound to show that there was justification for his refusal. He did not. Moreover, from the evidence it appears conclusively that there was no such justification, since when request was first made he consented, and afterwards, when he was taken before the physician, he refused to do so. Furthermore, if appellant wanted to explain his refusal and was not ready at the time of the trial, he could have said so to the court stating the evidence which he had available. He preferred not to. He cannot complain of his own indifference.

■ As we have stated, these are two separate procedures. That is why the information for driving while intoxicated need not contain any allegation in connection with the refusal to have the samples taken. Appellant's contentions part from the erroneous premise that the latter aspect, derived from the driver's acts, is of a criminal nature and therefore cannot prevail.[8]

---

[7] The warning made to appellant was not altogether correct, since the policeman advised him that if "the court *found him guilty* his license could be suspended for two years." Of course, this did not prejudice him at all.

[8] Although this was a civil action in which one of the elements of negligence imputed was driving a motor vehicle while intoxicated, it is well to point out that in *Sask. Mut. Ins. Co.* v. *Lyle*, 19 D.L.R.2d 134 (1959),

80

The judgment rendered by the Superior Court, Bayamón Part, on September 28, 1961 will be affirmed.[9]

it was said that in order to establish the commission of the offense in the criminal action evidence of the driver's refusal to have the samples taken was not admissible, since the statute itself gave him a right of refusal.

[9] For the purposes of discussion, we have assumed that the pronouncement suspending the license for an additional period, based on the refusal to have the samples taken, is reviewable within the petition for appeal.